Good morning, Your Honors. My name is Serge Soni. I'm the appellant in this matter. I'd like to reserve five minutes for rebuttal, if I might. Mr. Soni, I don't see your name listed as counsel. Your Honor, we filed an amended appearance yesterday indicating that I would be conducting the argument today. Instead of Mr. Richardson? Correct. Very well. Thank you, Mr. Soni. Thank you. I appreciate that, Your Honor. Your Honor, we believe that this case should be considered and fairly decided on the basis of four decisions. First, the Santanco Supreme Court, California Supreme Court, 1982 decision that holds that an attorney's lien has priority and explains the public policy reasons for that. Second, the Panghorn decision of the Court of Appeals in 2002 that explains that equitable considerations favor the attorney that created the fund. Third, the Brienza 1995 appellate decision that indicates that equities support an attorney's lien over an acquired or assigned offset claim. And finally, the 1988 Buxom case, which says that equities, in considering equities, you look to whether there was a detrimental reliance by any of the other claimants. Counsel, we have the threshold question of the abstention issue. That's correct. Would you deal with that first, please? Certainly. We brought an action to resolve the issue of these claims in state court. Who did you name in that action? We named Scott Stahel, we named VNU. We did not include the archives because the archives did not make a claim to the fund. But we had before the court in that case all parties that were asserting a claim towards the funds. What happened to that case? On a request for a stay by opposing counsel, the superior court stayed the action. It was just sitting there? It was sitting there. It's now been dismissed. You dismissed it? I think it was dismissed jointly by the parties. After this court, after the trial court refused to dismiss the federal action, there were a couple of status conferences and it was decided that Let me ask you this. All the issues that you raised that are raised in this case, could they have been raised and litigated in that case that was dismissed? Absolutely, every one of them. There's nothing that was raised in this case that couldn't have been raised in the other case. What Scott Stahel did is rather than respond to that complaint in state court, they chose to file a motion to stay with an indication they were going to be interpleading the funds in federal court. Several months after the case had been pending, they finally chose to come to federal court and interplead the funds. We came before the court and said there's a pending action. Under California law, can you force an interpleader in state court? Yes. Can you force a stakeholder to interplead the funds? I think you can certainly sue for it. I don't know whether there's a procedure for compelling the deposit of funds. I presume you could do it. You had filed your own action against your client, correct? Correct. To reduce the fee agreement or the fee amount to a lien. We brought it after the trial court determined that we had to do so. We maintained in front of the court that we did not. That the action before her at that time was an independent action. What the court did was misconstrue the decision in Brown. In Brown, an attempt was made to have the trial court in the underlying case that created the fund make a determination of the validity of the attorney's lien. The court in Brown said you can't do that here. You're not a party to this case, Mr. Attorney. You need to go bring an independent action to establish your lien. Then you can go proceed to have a determination of which lien has priority. In the interpleader action in federal court, in this case, your firm was a party? That's correct. A claimant? Our firm was a claimant to the funds. We were a party in the action.  But nevertheless, the trial court erroneously said, no, you've got to go out there and sue your client, establish the validity of your claim before we will determine its priority. And you went and did that and you got a stipulated judgment? That's correct. The court still thought there was something wrong with that stipulated judgment. Can you explain that? The court seemed offended by the fact that it was a stipulated judgment rather than a contested judgment. But the client had always maintained that he did not object to the fee claim. He did not contend that he had any rights to the funds. And he acknowledged his liability for the fee obligation. The question that was raised by the other side was, was that a knowing concession with the benefit of independent counsel? Our attorney-client agreement, which created the initial attorney-client lien, provided a direction to the client that he should obtain independent counsel. The client acknowledged the right to have independent counsel and accepted the agreement and understood that there was going to be a lien on proceeds. The client testified by declaration and by deposition. He knew that there was a lien and he accepted that. Now, did the district court think that was collusive? Did the district court make a finding or was that? Well, that's part of the problem. What the district court did was not say that there was, in fact, collusion, but there's a suspicion or a potential for collusion. Well, what does that mean? If there is no collusion, in fact, no proof of collusion, you cannot make a decision upon, gee, there may be a bad smell in the state of Denmark and therefore we won't go there. The client was represented by independent counsel out of Eugene, Oregon. The client did not contest the complaint, did not file an answer, but stipulated to the judgment. The amount of the judgment, a million four roughly, was one of the things that the court was offended by. How could it be so much? Well, this was a case that was hotly litigated with two substantial law firms that were insurance funded on the other side. The case went through discovery, summary judgment, trial, and appeal. The VNU case, the BPI case that VNU's judgment is based on, involved five copyrights. This case involved seven copyrights. The VNU case was decided on summary judgment after some discovery, and their claim was $770,000. So there was nothing that should have raised the ire or concern about the reasonableness of the fee, particularly when clients with independent counsel recognized that it was appropriate and stipulated to that judgment. So what we have here is a situation where there wasn't a basis for the trial court to sit as an appellate authority to question the appropriateness of an underlying state court judgment that was entered by stipulation of the parties. Nobody gave it that right. And opposing counsels' claims, arguments about possible collusion, that it would exhaust the fund and leave nothing for the rest, that the client was otherwise insolvent, really are all irrelevancies. So the district court was just making this equitable determination, right? Because if I understand it correctly, if we just looked at lien priority, your law firm's lien was prior in time, is that right? But the court was authorized to weigh the equities amongst the various claimants and made this equitable determination that Sony should go last, I guess. And so are we reviewing that for abuse of discretion? And if so, what was abusive about, what did the district court do wrong specifically? Should it have made findings or were its findings wrong? We have the benefit today of a stipulated record. There was no trial, no testimony, no witnesses. We had a stipulated series of facts. The court can review that for de novo. The court's ultimate conclusion was a result of errors of law. Its decision to grant priority to the other claimants was an abuse of discretion based on an error of law. And the error of law was what? The error of law were numerous. First, its decision to punish the Sony Law Firm for alleged wrongdoings in other cases. Second, its decision to allow a set-off to a third party where there was a lack of mutuality. And third, the granting of junior liens where there was no showing of either detrimental reliance or contribution to the fund or any other equitable reason that should have given them priority over the first-in-time attorney claim. These errors in law resulted from its failure to strike and disregard all of these extraneous claims. It was as if the court seemed to believe that counsel was now impressed with a scarlet letter by virtue of the so-called wrongdoings in other cases and that his rights now were abolished. In this case, that would be wrong. In this particular case, what we had was a situation that in other cases, assertions were made of wrongdoing. The judges in those cases considered those assertions and provided whatever remedies they thought were appropriate. In the VNU case, there was an award to VNU. They had a recovery. It was fully addressed in that award. In the case before Judge Mass, he reduced our fees in view of whatever his concerns were. But what he determined in his final finding was we were entitled to fees in the amount that was awarded. And not only were we entitled to fees in that amount, but we had obtained judgment against both Julians and Barclays, Barclay Gutera, for infringement of the copyrights. We did not recover the monetary amounts that we had sought, but we obtained a monetary judgment against Julians, and we were not granted a monetary judgment against Barclay Gutera, even though the jury found that they had committed copyright infringement. They now seek to take the same position that Judge Mass did and say, oh, but you did those bad things, and therefore, even the amount that the judge found you were entitled to, you shouldn't be awarded and shouldn't be given priority. There's no basis for that. Counsel, I'm going to go back to the abstention issue. You raised abstention. Your brief refers to Colorado River, but why didn't the judge do a Wilton-Brilhart analysis? Isn't that a proper mode, given the fact this is a declaratory judgment case? We believe it should have. It didn't. I can't tell you why it didn't. We certainly argued that the court should apply abstention doctrine, recognize that this is merely a declaratory judgment. The other case was pending at the time. There's a state court case pending. It has jurisdiction over all of the parties. All of the issues can be raised there. There's nothing that requires the court to exercise jurisdiction and to refuse to abstain. Now, he did address Colorado River, but very cryptically simply dismissed it, as I understand it. Correct. There really wasn't much more we could do. We presented the arguments. The court refused to apply them. The law was there. Could it be said that he inferentially did the Wilton-Brilhart analysis? Is there anything that would support that? I don't think so. We've certainly maintained that the court's findings were incomplete and erroneous by virtue of its failure to consider these facts. The claims that were pending in the district court, were they state law claims? Was it a priority of liens? Completely. It was all state law? It was all state law. And the district court had jurisdiction under the interpleader statute, or did it have jurisdiction under some other basis? Well, in a jurisdiction, the state court, I'm sorry? The district court. The federal court. The federal court had jurisdiction under both the declaratory relief statute and the interpleader statute. Because the declaratory relief says you have to have jurisdiction on some other basis, right? Correct. But under interpleader, under 1335, I guess it is, it did have jurisdiction. Is that right? Yes. So it had jurisdiction under 1335, and it was adjudicating state law claims. Is that right? Because Diesel, in some of the other cases, Snodgrass says, if there are claims that exist independent of a request for declaratory relief, that's abuse of discretion for the district court not to exercise its jurisdiction. So didn't the district court have to go forward and exercise its jurisdiction, given that its jurisdiction was under interpleader and state law claims? There were, there was a state law action pending that already involved the same issues and the same parties. But we don't automatically abstain. I mean, the district court, it would be abuse of discretion. We said that in Diesel and Snodgrass. Just because there's another state law claim pending, a state case pending, a district court can't abstain, right? It is permissive. It is not mandatory. But the application of the standards both expressed in Diesel, as well as in Colorado River, make fairly clear that what the court should avoid is a multiplicity of actions, a conservation of judicial resources. And where there is a prior state action pending that involves the same parties and the same issues, it ought to defer. There's no reason, no compelling reason for it to step forth and intercede and demand the exercise of its jurisdiction. It's permissive. And if it's Wilton-Brillhart, the presumption is in favor of abstention, as I understand it, whereas it's reciprocal in terms of Colorado River. That's correct. Very well. Your Honor, I see I have very little time if I might reserve. I did want to address the Scottsdale claim, which is merely an acquired claim. There's no mutuality there. But the significant importance is that what Scottsdale was trying to do was, as Julian's indemnitor, it did not stand in Julian's shoes. And what it was trying to do was take a subrogese right from Barclay Gutera and apply it to the indemnitor's or the primary obligation of Julian's. And that simply doesn't satisfy the mutuality standard. I can address any more on reply. Well, thank you, Counsel. Your time for your side has expired. Thank you very much, Mr. Sone. We will now hear from the other side. May it please the Court. My name is Melissa O'Loughlin-White, and I'm here with Eric Hansen on behalf of VNU. We will share a portion of our 15 minutes with Counsel for Scottsdale, who is also present in the courtroom. Beginning with Judge O'Scallon's question about the abstention doctrine, backing up to how this all occurred, we have to look back to the original actions where the fee awards were entered, and those were both federal actions in the district court for the District of California. And that money that was interplayed into the court was to satisfy a dispute that arose under the federal case. There was no need to bring the interpleader action in federal court. I mean, there's a dispute over who's going to get this money, correct? Well, and perhaps Counsel for Scottsdale. Interplayed in the state court. State court has a very well-defined interpleader proceeding. A couple of reasons why the current action that was pending in state court was insufficient. First of all, the archives was not named. Mr. Sone made references to we had a right to this. So when you file an interpleader action, you identify everybody. You serve and bring in everybody who might have a claim to the money. I understand that, Your Honor, and I do not know that. So you just name everybody and say, if you've got a claim to this money, you file your claim into the court, and the court will determine who's going to get this money. I understand, Your Honor. And it was commenced by Scottsdale, who's my co-counsel at table, may be able to speak better to this. But certainly there are always a lot of good reasons why an out-of-state defendant. What struck me is that it looked to me like the reason why you went to federal court is because of the possibility of a low number either to Judge Matz or to the other judge. Well, I can't imagine that a state court judge would dismiss it. No, no. The interpleader action that was filed in federal court, once it was filed in federal court, there was a good chance that it could have been low numbered to Judge Matz. You don't get me? I understand. I do understand. And whether or not there may or may not have been a better chance to get it in front of a certain judge is just speculation after the fact. I mean, obviously it wasn't. It's kind of curious to me why, you know, when there was a pending interpleader action in state court or a case in state court that could have resolved all of these issues, the case then ends up, they drop the money into the district court registry and bring an interpleader action in federal court. If, as Your Honor is suggesting, that the action commenced by Sony in state court should have been where this occurred, then what would have happened is it would have been removed immediately to federal court under diversity jurisdiction. So under no circumstances would we have been required. Was diversity jurisdiction one of the basis for jurisdiction in this case? Yes. Yes. And it's also a basis identified by Sony in their pleadings for jurisdiction for this court. Help me understand. I was confused about the Wilton-Grillhart abstention versus the Colorado River abstention. Now, Wilton is pretty clear that it's limited to declaratory judgment action. This was declaratory judgment and interpleader. Both complaints were made or claims were made. We don't have a case, at least in this circuit, on interpleader and what sort of abstention is appropriate. And there is that language in Diesel that I was citing earlier, saying that if there is claims that would exist independent of declaratory relief, then the district court is left with Colorado River abstention. How do we figure out which form of abstention is appropriate here for this particular claim in district court? Well, because this is an interpleader action, this is not a declaratory judgment specific action. It's not. But it's asking for declaratory relief. And it's asking for clarification on who these funds get distributed to. So slightly different. That's a declaration of rights. Correct. Correct. And then to distribute the money as well. But it is a fair question, Your Honor, and the district court judge did specifically cite Colorado River and indicated that this was. . . Rather cryptically, I would think. Well, and there was a lot of issues, as you can imagine, in this case, because it was floating around federal court. And then all of a sudden, it hops to state court. The archives isn't named. So hypothetically, could we have gone back and fixed some of that and then removed it under diversity? Perhaps. But at that point, it seemed inevitable, and it seemed entirely appropriate for a federal court to adjudicate where the money was going to go, based on the federal rulings that were entered in. And to the extent that there's a suggestion that there may have been a preference that it might end up with one specific judge, obviously whenever there's a forum selection or a lawsuit filed, each party has their preference on which forum they'd prefer to be in for a variety of reasons. I'm sure Mr. Soney had his preference of going back to state court. And that's exactly my point, Your Honor. If I may talk for a moment about another threshold issue, if you will, that wasn't discussed during Mr. Soney's time, is whether or not there is an attorney lien in this case. And I encourage Your Honors to look at the record and look at the agreement, because nowhere in it does it indicate that payment for the Soney law firm's fees would be deferred. And that is a requirement in order for a so-called secret lien, charging lien, to have been created. But didn't he reduce whatever lien he may have had to a judgment lien? That did not occur until after the court ruled in this case. And the district court judge in this case specifically determined that that was too late and that it could have occurred earlier, it didn't, and therefore it wouldn't be considered. And so that was presented for the first time on reconsideration. So if this court agrees that the judge was within her discretion to not consider this evidence and she deemed it not to be newly discovered evidence, then it is not in the record before this court right now. And so we're only speculating as to what would have happened if the Soney law firm would have obtained that ruling in state court earlier. And if it was before the judge, then we would be in a different situation. But as we sit here today, that ruling is not part of what's considered. The action that the Soney firm filed against their client, that was for breach of contract? I don't know. It was the separate action that the Brown case mandates in order to establish the attorney lien. I don't recall exactly what the cause of action was, but when you look at the record here, all that it shows is that there was no appearance made for the archives, the client, and that a stipulated judgment was entered into for almost twice as much as the amount of fees that were even requested in that. Let me just see here. Did that stipulated judgment just have an amount of money? Correct. And it came after the fact, and so it wasn't part of the judge's consideration. This was a bench trial, and these were stipulated facts. This district court judge looked at the equities as Mr. Soney opened with agreeing that that is what needs to be done. This was a discretionary decision. She took into account everything that happened. She was not permitted to put on blinders. The issues that were adjudicated in the early federal court actions were as to the amount of fees. We're not here today talking about the amount. We're here talking about priority. There was no attorney fee lien established, and therefore all of Mr. Soney's arguments about the public policy behind attorney fees just don't apply in this case. So let me ask you this. So he did file, when he filed his action in state court, the Soney Law Firm versus Julian's Auction House, the complaint was styled the complaint to enforce charging lien. Was he seeking to go back and to determine, ask the state court to determine that at some point in time he had a valid attorney's lien? I cannot speak for Mr. Soney as to what he was trying to do, but under the law and the facts that are in this record, it's clear there was no charging lien at the time. I suppose had that action gone forward, that's what Mr. Soney may have argued. I also note that if Mr. Soney had a problem with what the state court did,  I'm talking about the case where he named Julian's Auction House. Right, the original. No, VNU Scottsdale Insurance. It was filed in October 2009. And this was the, you're referring to the action that occurred before the money was interplated. Yes. Is that correct? Yes. Right. And I believe it is Mr. Soney's position that he believes he would have been able to establish under the criteria of Brown or under some other argument that there was an attorney fee lien, but there wasn't one. Okay. So just to reiterate, the first-in-time rule is subject to other things being equal. The California Civil Code 2897 that Mr. Soney relies on specifically starts with all other things being equal, comma, then it's first-in-time. But are you saying that the lien wasn't first-in-time in the first place? Is that your position? Yes, I am. And even if it was, the equities came into play, and the judge then appropriately considered everything before her and in her discretion concluded that it was not, that the Soney lien was not prioritized. I think counsel was listing certain legal errors that they think the district court made. Can you address those? I'm not sure I jotted down all of his legal errors. It is certainly on an appeal of the stipulated facts before this court. It is everything that the judge did was discretionary. And Mr. Soney's arguments, as I understand them, presuppose that there was an attorney lien that this court didn't prioritize correctly. Because there was not an attorney lien, and there's no discretion, no abuse of discretion by the trial judge, no clear error, then his legal arguments fall apart as well. The district court didn't rule that there was no attorney lien, did it? I thought it was looking at just the equities. Certainly looking just at the equities. It's not as clear-cut as I believe the law could say that it is. I don't think she needed to. The question before her was which of these liens have priority, and she answered that, and Mr. Soney did not get the relief that he requested. Counsel, you've been down to less than four minutes. Did you want to share time? Does the court have any more questions for me? Okay, then I will. Thank you. My name is Todd Haas. I represent Scottsdale Insurance Company. May it please the court, I'll try to deal with the two issues that I think were raised right now, which are abstention, and then the last question you had, which were the three issues that Mr. Soney brought up, and because that was the most recent question in time, I'll deal with that. The three issues that he brought up as the legal issues were that the court erred because they punished Soney for something that already had been adjudicated as part of the attorney's demotion, that the court erred by allowing Scottsdale's offset, and the court erred by allowing the junior lien. I think the junior lien issue has already been discussed, but I'd like to talk about the first two, going to the first one as to the punishment with respect to the evidence. This is an evidentiary issue. It's an abuse of discretion. It's a binge trial. I think the court on its own can determine, weighing evidence, what's prejudicial, what's more probative. I think the court's ruling sufficiently clearly identified what it saw as issues, identified those, and took those into account in making its ruling. Clearly, it did not abuse its discretion. Clearly, it did not make an erroneous decision about this evidence of the litigation tactics, what had gone on in the underlying case. And the court was well within its rights to consider that evidence. This was an equitable determination that the court had to make under California law. Any factor can apply in an equitable decision such as this. The court taking into account all the facts and circumstances of the underlying case in determining whether the offset should apply before the secret attorney charging lien is clearly within the discretion of the court, and the court did not abuse its discretion by allowing such evidence. I think that related to the first issue that you brought up in terms of Mr. Stoney brought up. As to the offset issue, and this is Scott's case, understand the procedural posture of what happened. In the underlying case, Scottsdale issued insurance for two defendants in the same case. In that case, two competing judgments were entered. Scottsdale was both obligated to pay money on behalf of the Julian's defendants and obligated to obtain money on behalf of the Barkley-Butera defendants. And all Scottsdale is saying is you don't have to pay all this money and never get your money. You can offset. California law is abundantly clear that Scottsdale was allowed such an offset. California law says they don't even have to be related cases. A defendant could buy another judgment wholly separate. It doesn't have to even relate to this case. But in this case, we have a specific instance where it's the same case at the same time. Two judgments entered. Scottsdale should be able to offset. The equities, as the court set forth, I think clearly in the record, show that it did not abuse its discretion in allowing Scottsdale's offset first. And I want to be clear about one point, because I think it got murky with respect to the argument and in the brief. The standard of review for the equitable determination by the court is abusive discretion. It is not de novo. The law, and I've cited it in our brief, is clear. The standard of review here, because it was an equitable determination by the court, is abusive discretion. So Mr. Stoney has the burden here to show that the court somehow abused its discretion by allowing Scottsdale to offset its judgment that it had obtained with respect to the other judgment against the Julian defendant. And last, I do want to make one point clear. I know it came up with regard to why Scottsdale filed the case in federal court. And I was involved in this. Stoney had threatened to file a state court action. Scottsdale was preparing its federal court action at the time and preparing to interplead. The issue was just how much it should interplead. There was a lengthy calculation, disputed calculation between the parties. Scottsdale interpled all the money in federal court because that's where the underlying case arose. It also named Milton Green so that Milton Green would be bound by that judgment, which the state court had done. And it had announced, and Scottsdale had already announced in state court, that he would have removed the state court case to federal court case if the state wasn't in place. So irrespective, this case was going to be in federal court. What was the federal claim in the state court case for removal purposes? Well, it would have been diversity. We have complete diversity. You'll see in everybody's jurisdictional statement, there's complete diversity of jurisdiction in this case. So Scottsdale had every right to remove it. It just decided to stay the state court case pending the federal court case because it was going to interplead all the money with the federal court district court. And I know that's my time. Thank you very much. Thank you very much, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'scannlain, Paez, Ikuta